IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Julia Paxton, on behalf of herself and the class members described below, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 12-cv-6499 |
| v. | ) ) | |
| National Credit Adjusters, LLC, | ) ) | Judge: Thomas M. Durkin |
| Defendant. | ) ) | Magistrate Judge Mary M. Rowland |

## JOINT MOTION FOR PRELIMINARY APPROVAL

Plaintiff, Julia Paxton ("Plaintiff"), individually, and as representative of the class of persons defined below in Paragraph 4(a)("Class"), and Defendant, National Credit Adjusters, LLC ("NCA" or "Defendant"), requests that this Court enter an order which (i) preliminarily approves the Class Settlement Agreement ("Agreement") attached as Appendix A; (ii) sets dates for Class members to opt out, object, or return a claim form, (iii) sets a date for Class Counsel to file a fee petition (iv) schedules a hearing for final approval of the Agreement; (v) approves the mailing of notice to the Class in the form of Exhibit 1 to Appendix A, and (vi) finds that the mailing of such notice satisfies due process. A copy of the proposed preliminary approval order is attached as Exhibit 2 to Appendix A.

1. Plaintiff, individually and on behalf of a class, filed a lawsuit in the United States District Court for the Northern District of Illinois, entitled *Julia Paxton, on behalf of herself and the class members described below v. National Credit Adjusters, LLC*, Case No. 12-cv-6499 (the "Litigation" or "Lawsuit"), alleging that NCA violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et. al*., the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1 *et. al*. and the Illinois Consumer Fraud Act ("ICFA") when it attempted to collect loans

made at more than 9% interest made by an entity which did not possess a bank charter and was not licensed by the Illinois Department of Financial and Professional Regulation (Counts I–III of the Lawsuit). Plaintiff also alleged that NCA violated the FDCPA when it attempted to collect debts from persons in the United States where it did not have an original note endorsed to itself or to bearer and violated the ICFA when it attempted to collect such debts from persons in Illinois and sought to enjoin such conduct (Counts IV–VI of the Lawsuit). Upon the filing of this Joint Motion, Plaintiff will file a stipulation for dismissal of the claims in Counts IV–VI of the Lawsuit without prejudice.

2. After engaging in two settlement conferences with Judge James F. Holderman on February 4, 2015 and March 10, 2015 and participating in a private mediation at JAMS before retired Judge James F. Holderman on November 24, 2015, the parties reached a settlement to resolve the Litigation as well as two New York class actions, *Gerstle v. National Credit Adjusters, LLC*, 12-cv-7593-MCG (S.D.N.Y.) and *Couser v. National Credit Adjusters, LLC*, 13-cv-2542-MCG and an Indiana case, *Keehn v. National Credit Adjusters, LLC*, 3:15-cv-462 (N.D.Ind).

3. Defendant denies violating the FDCPA, ICAA and ICFA and denies all liability to Plaintiff and the Settlement Classes. Defendant desires to settle the claims brought solely to avoid the expense, burden, and uncertainty of further litigation, and to put to rest all claims that have been or could have been asserted by Plaintiff and the Settlement Classes against Defendant in the Litigation.

4. Counsel for the parties have analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the Litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of

the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals. Based upon counsel's review and analysis, the parties have entered into the Agreement to settle and compromise the Litigation on the terms and conditions embodied in the Agreement and agree as follows:

    a.    <u>Settlement Classes</u>. The parties agree to seek certification of the following Settlement Classes:

Class A (a) all individuals with Illinois addresses (b) from whom Defendant (by itself or through an outside agency) sought to collect a loan made at more than 9% interest (c) made by an entity which did not possess a bank charter and was not licensed by the Illinois Department of Financial and Professional Regulation (d) where any communication occurred on or after August 16, 2011. There are approximately 4,725 persons that fall within Class A.

Class B (a) all individuals with Illinois addresses (b) from whom Defendant (by itself or through an outside agency) sought to collect a loan made at more than 9% interest (c) made by an entity which did not possess a bank charter and was not licensed by the Illinois Department of Financial and Professional Regulation (d) where NCA collected more than the principal balance of the loan plus 9% interest (e) where any communication occurred on or after August 16, 2007. There are approximately 4,774 persons that fall within Class B. Approximately 2,266 persons are members of Class A and Class B;

    b.    <u>Relief to Plaintiff</u>. NCA through its insurer agrees to pay $4,500.00 to Plaintiff;

    c.    <u>Relief to Settlement Classes</u>. NCA agrees to make the following payments to the Settlement Classes:

Class A: Defendant through its insurer will create a class settlement fund of $20,000 ("Class A Recovery"), which NCA will distribute *pro rata* through First Class, Inc. among class members who do not exclude themselves and who timely return a valid claim form ("Class A Claimants"). The term *pro rata* shall mean a distribution percentage based upon the amount of a class member's claim divided by the total amount of claims submitted by persons who do not exclude themselves and who timely submitted a claim form. Class A Claimants will receive a *pro rata* share of the Class A Recovery by check.

Class B: Defendant will create a class settlement fund of $150,000 ("Class B Recovery")($75,000 of which is to be paid by its insurer and $75,000 of which is to be paid by NCA), which shall be distributed to class members who do not exclude themselves and who timely return a valid claim form ("Class B

3

Claimants"). NCA will distribute Class B Recovery through First Class, Inc. by calculating the total amount paid over principal plus 9% interest by Class B Claimants and assigning a percentage to each Class B Claimant based on their proportionate share of the total dollar value of Class B claims submitted ("Percentage of Class B Recovery"). Each Class B Claimant will receive their Percentage of Class B Recovery by check.

Checks issued to Class A and Class B Claimants shall be void after 60 days from issuance. If any portion of the Class A or Class B Recovery remains 90 days after issuance of the Claimants' checks, these remaining funds will be distributed as set forth below;

  d. <u>Cy Pres.</u> On or after 90 days following issuance of the last Class A Claimants and Class B Claimants' checks, any uncashed checks or undistributed funds will be paid to Travelers to offset its cost associated with sending class notice and distributing the settlement checks. If there are any funds remaining after Travelers' administration costs have been paid, any uncashed funds will be distributed as a *cy pres* recovery to CARPLS.

  e. <u>Attorneys' Fees and Costs</u>. Counsel for Plaintiff and the Class shall petition the Court for approval of an award of fees in the amount of $180,000. Pending the Court's approval, NCA through its insurer shall pay counsel for Plaintiff and the Class, that amount which the Court deems reasonable, but not to exceed $180,000.00, as attorneys' fees and costs;

  f. <u>Class Notice</u>. Within twenty (20) days of entry of the Preliminary Approval Order, Defendant shall cause actual notice, in the form of <u>Exhibit 1</u>, to be sent to the last known addresses of the Settlement Class members, according to Defendant's records. Defendant shall distribute the notice via any form of U.S. Mail providing address forwarding. Each notice shall be sent with a request for forwarding addresses. In the event that a notice is returned as undeliverable and a forwarding address is provided, Defendant shall cause to be forwarded any such returned notice to the address provided within seven days of receipt. Defendant is not required to skip trace any notices that are returned as undeliverable to class members who are solely members of Class A. However, Defendant will skip trace notices and checks returned for members of Class B. The costs of skip tracing the addresses of members of Class B whose notice is returned undeliverable shall be deducted from the Class B Recovery. The costs of skip tracing the addresses of members of Class B whose check is returned undeliverable shall be deducted from the respective Class B member's share of the Percentage of Class B Recovery. If final approval is granted, the Defendant shall retain all documents and records generated during its administration of the settlement, including records of notice given to the Settlement Classes, records of undelivered mail, claim forms and payments to Class A Claimants and Class B Claimants for a period of at least six months following the issuance of an order dismissing the Litigation with prejudice, and the expiration of all deadlines for appeal from such order.

131320306v1 0938625

      g.    <u>Class Members' Right to Opt Out</u>. Any Class Member who properly files a timely written request for exclusion from the Class shall be excluded from the Class and shall have no rights as Class Members pursuant to the Agreement. A request for exclusion must be in writing and state information, including the name, address and phone number of the person(s) or entity seeking exclusion. The request must be mailed to Class Counsel at the address provided in the Class Notice and received by such date as set by the Court. A request for exclusion that does not include all of the foregoing information, or that is sent to an address other than the one designated in the Class Notice, or that is not received within the time specified shall be invalid and the person(s) serving such request shall remain a Class Member and shall be bound as a Class Member by the Settlement, if approved. Class Counsel shall forward copies of all requests for exclusion to Counsel for Defendant within five (5) days of receipt.

    4.    Rule 23(b)(3) of the Federal Rules of Civil Procedure governs the conditional certification sought by the parties. One or more members of a class may sue or be sued as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class which predominate over individual issues, (3) the claims or defenses of the representative party are typical of the claims or defenses of the class, (4) the representative party will fairly and adequately protect the interests of the class, and (5) classwide treatment is superior to other forms of claim resolution.

    5.    Based upon information received from Defendant, the size of the Settlement Classes each exceed 4700, which is sufficient to satisfy numerosity under Rule 23(a)(1).

    6.    A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) *citing Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The requirement of commonality may be satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982). Plaintiff contends that there are common questions of law or fact affecting the class, and that these questions include but are not limited to:

5

a. whether Defendant's conduct violated the FDCPA; b. whether Plaintiff and the other class members are entitled to recover damages and, if so, in what amount. Additionally, Plaintiff alleges that the essential fact that links the members of the Settlement Classes is that Defendant has been attempting to collect usurious loans from them.

7. A class representative's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). The typicality prong is analyzed by asking whether the named plaintiff has incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. *Baby Neal v. Casey*, 43 F.3d 48, 57 (3rd Cir. 1994); *Beck v. Maximus*, 457 F.3d 291, 295-96 (3rd Cir. 2006). Plaintiff contends that her claims are typical of the claims of the rest of the class. Plaintiff has generally satisfied her burden on typicality "if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561-562. Rule 23(a)(3) "requires only a showing that the representative plaintiffs' interests are not antagonistic or in conflict with the class as a whole." *Metge v. Baehler*, 77 F.R.D. 470, 475 (S.D. Iowa 1978). Plaintiff alleges that the typicality requirement has been satisfied because both she and the rest of the Settlement Classes were subject to the same collection practices and that those collection practices allegedly violated the FDCPA.

8. Adequacy of representation consists of two prongs: the adequacy of counsel to handle a class action and the adequacy of the named plaintiff to protect the differing interests of the class members. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). Plaintiff asserts that she will fairly and adequately represent the interests of the class and

that she has no interests adverse to other members of the Settlement Classes. Plaintiff has hired attorneys who have substantial experience in the handling of both consumer protection litigation and class actions.

9. A class action is superior to other available methods for the fair and efficient adjudication of the controversy in this case, because a class action resolution of the issues described above outweighs the difficulties in management of the class as separate claimants and allows access to the courts for those who might not gain such access standing alone. Plaintiff alleges that the causes of action forming the basis of the class claims in this case are such that the prosecution of separate actions by individual members of the class would create the risk of establishing incompatible standards of conduct for Defendant. Due to that, and the efficiencies of proceeding in a single case to resolve hundreds of identical claims, plaintiff claims that class treatment is superior to other forms of resolution.

10. Solely for the purposes of this motion and to effectuate the proposed settlement, Defendant does not dispute that the Settlement Classes should be certified for settlement purposes only. Defendant acknowledges the doctrine that "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).

11. The FDCPA limits a defendant's liability in a class action to statutory damages not exceeding the lesser of $500,000 or one percent of the defendant's net worth and any actual damage sustained by such person as a result of the alleged FDCPA violation. NCA has provided the Declaration of Florentino Zamora, Jr., the Chief Financial Officer of NCA which explains that NCA has suffered significant financial loss over the last three years. Not only has NCA's net worth significantly declined, it has recently reached settlements with two New York regulatory agencies, the New York City Department of Consumer Affairs ("NYDCA") and the

131320306v1 0938625

New York Department of Financial Services ("NYDFS"), which settlements NCA estimates will cost the company approximately 1.5 million. Based upon the financial affidavit NCA provided to Class Counsel, evidence regarding NCA's obligations to the NYDCA and NYDFS and evidence of the company's continued financial decline, Class Counsel believes that the Agreement is fair and reasonable, would be in the best interest of the Settlement Classes, and should be approved by the Court.

12. If this Agreement is not approved by the Court or for any reason does not become effective, it shall be deemed null and void and shall be without prejudice to the rights of the parties hereto and shall not be used in any subsequent proceedings, in this or any other litigation, or in any manner whatsoever.

13. The settlement in this case complies with recent case law from the Seventh Circuit concerning class action awards, and is consistent with the principles set forth in *Pearson v. NBTY, Inc*., 772 F.3d 778 (7th Cir. 2014), *Redman v. RadioShack Corp*., 768 F.3d 622 *7th Cir. 2014) and *Eubank v. Pella Corp*., 753 F.3d 718 (7th Cir. 2014). First, the award to the class is distinct and separate from the attorneys' fees in this case. The FDCPA is a fee shifting statute and the fees being awarded to the Settlement Classes would not come from a class fund but rather by payment directly from NCA, pursuant to the fee shifting provision of the FDCPA as set out in Section 1692k(a)(3). Thus the size of the attorneys' fees award does not affect the award to the class, unlike cases such as *Pearson*, *Redman* and *Eubank* where payment of the attorneys' fees affected the total payment to the class. Second because of the net worth cap on class recovery in the FDCPA, class counsel contends that the class would receive the maximum statutory damages it could receive under the statute given NCA's continued financial decline in contrast to *Pearson*, *Redman* and *Eubank* where the potential award to the class was not capped

by statute and the attorneys presumably would have achieved a larger class fund by potentially reducing attorneys' fees. In this case, even if the classes were to proceed to trial they would not receive statutory damages of more than 1% of the debt collector's net worth. Moreover, as NCA's net worth has consistently declined over the past three years, it is reasonable to assume that by the time of trial there would be even less available to distribute to any class in statutory damages. The proposed settlement also provides $150,000 to be distributed to compensate for any alleged actual damages claimed. NCA, through First Class, Inc. will distribute $150,000 to Class B Claimants calculating the total amount paid by such class member over principal plus 9% interest on the class member's loan and assigning a percentage to each Class B Claimant based on their proportionate share of the total dollar value of Class B claims submitted.

14. The parties further submit that the class notice gives fair notice to the classes, the terms of the settlement, and the ways in which class members can participate (or not) in the settlement, thus satisfying the requirements of Fed.R.Civ.P.23, and of due process.

15. <u>Schedule for Class Notice and Opt Outs:</u> Plaintiff and Defendant request that the Court set the following schedule for the proposed Agreement:

     a. Class Notice (Exhibit 1 to Appendix A) is to be mailed within 20 days of entry of the Preliminary Approval Order;

     b. Class members shall have forty-five (45) days after mailing of the notice of the proposed settlement to complete and postmark a claim form, request to opt out of the proposed settlement or object to the proposed settlement; and

     c. A final hearing on the fairness and reasonableness of the Agreement and whether the final approval shall be given to it and the requests for fees and expenses by counsel for the Settlement Classes will be held before this Court on a date at least ninety (90) days from the date NCA mails notice pursuant to the Class Action Fairness Act.

     d. Class Counsel shall file a fee petition 30 days after the initial mailing of notice to the class members.

16.     In the event that there is any conflict between any provision of this Motion and the Settlement Agreement between the parties, the parties intend for the Agreement to control, subject to Court approval.

WHEREFORE, the parties respectfully request that the Court enter an order in the form of Exhibit 2 to Appendix A, which (a) preliminarily approves this Agreement; (b) schedules a hearing for final approval of this Agreement; (c) approves Exhibit 1 to Appendix A as notice to the Class to be directed to the last known address of the class members as shown on NCA's records, (d) sets a date for class counsel to file a fee petition (e) sets dates for class members to opt-out, object, or return a claim form and (f) schedules a hearing for final approval under FED. R. CIV. P. 23(c)(2).

Respectfully submitted,

/s/*Tiffany Hardy*
Tiffany Hardy
One of the attorneys for Julia Paxton

Daniel Edelman
Cathleen Combs
Tiffany Hardy
Edelman, Combs, Latturner & Goodwin, LLC
20 South Clark Street, Suite 1500
Chicago, IL  60603
Telephone: 312-739-4200
Facsimile: (312) 419-0379
dedelman@edcombs.com
ccombs@edcombs.com
thardy@edcombs.com

/s/ *Jennifer W. Weller*
Jennifer W. Weller
One of the attorneys for
National Credit Adjusters, LLC

David M. Schultz
Jennifer W. Weller
Hinshaw & Culbertson LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
Telephone: 312-704-3000
Facsimile: 312-704-3001
dschultz@hinshawlaw.com
jweller@hinshawlaw.com

Paul D. Sinclair, Esq.
Polsinelli PC
900 W 48th Street
Suite 900
Kansas City, Missouri  64112-1895
Telephone (816)395-0697
Facsimile: (816)753-1536
psinclair@polsinelli.com